We'll go ahead and get started. Oh, and by the way, we have four cases today, and we'll take a short time off between after the second one and the third one. Okay, and we'll probably take five to ten minutes and then come back. So we'll start with case number 25-40396, Baker v. City of McKinney, and we'll begin with you, Edwin Voss. Good morning. May it please the court. My name is Ed Voss, and I represent the City of McKinney in this case, who is the appellant. This court should reverse the district court's pretrial and post-trial rulings and vacate the district court's final judgment and render judgment that Ms. Baker's state takings claim should be dismissed without prejudice to the refiling thereof in state court. The court knows that this is the second appeal that is being heard in this case. I won't really need to go into the facts too much because I think the court is aware of them. There are some procedural aspects I would like to address in the appeal that the city is bringing and some substantive law aspects that the city is bringing. I'll go ahead and address the substantive law aspects first because they really do kind of intertwine in a couple of ways with the procedural points I want to make, and that is the state takings law that was ruled upon by the district court was misapplied, and the district court misapplied state law when it granted the final judgment in the manner it did. Has any court in Texas, has any court applying a steal held that damage that police do responding to an emergency call is non-compensable? Not yet. I looked for it. It's been a long time. 45 years. But doesn't that suggest that the damage text in section 17 implies that police will have to pay just compensation even when they respond and do just what you need them to. I'm not ready to go there, Judge, for a couple of reasons. One is, in the steal case, I'm going to remind the court that the steal case was a summary judgment case. What had happened in the trial court and in the Court of Appeals in Houston is that the city had won by a grant of governmental immunity based on summary judgment. And I submit that the Supreme Court in Texas, in the steal case, only reversed the summary judgment by saying that no, cities are not immune from these kinds of takings claims. Isn't that essentially what you're asking for here, is to categorically, as a matter of law, exclude this type of claim? I am not, Your Honor, because what happened in the first appeal here is that in that Baker decision, there was a recognition of a public necessity exception to the Fifth Amendment. And the city is appealing because in Texas, there are cases that say that the two takings clauses, state and federal, are comparable. But they're not. As a textual matter, they're quite different. Well, there are some differences, but the Supreme Court in Texas has said that cases that decide the Fifth Amendment are instructive to decisions under Article I, Section 17. And so the city's position is the necessity exception was ruled upon in the Baker case. It should have been addressed in the district court below. It was not addressed in the district court below, whether or not there's a public necessity exception applicable in this case. The closest that the Texas courts have come is the Lake Houston case and the footnote, footnote 39, where the court seems to equate the prior federal Baker decision with Texas law. But then when it really drills down, it seems to say necessity under Texas law would mean only necessity when the, inevitably, the property would be destroyed. In other words, it's a much narrower necessity exception. War, pestilence, inevitable discovery. Would you realize what it says there, but I'm not there yet because it wasn't addressing a police action case like we have here. What was going on in that case was that there was a change in the Houston ordinances about the elevation of what could be built. And by raising the elevation, that increased the flooding potential. And that flooding potential ended up causing damage to property in an inverse condemnation claim. We don't have, there never was an allegation of an inverse condemnation claim here. I submit that there should have been under state law because that's where the differences that Judge Hope talked about in the language. Talk to whenever there's a damage or destruction of property, then in Texas law, that is an inverse condemnation claim. Why does the city want, though, to come and beat up a house and just say, eh, that's your problem? Because liability is important to the city. It's not an issue of being unfeeling or uncaring. It's an issue of liability and being responsible with the public funds. And so the city's position in the case is to be sure that it's only liable when it has to be liable, but not when it doesn't have to be. Now, okay, but that's not quite answer. That's a bit circular. What, this case before went only to trial on damages. This case, the parties had submitted proposed jury instructions. And yours, I think I'm correct. You tell me if I'm wrong. You said the test is purpose. In other words, if the purpose was to damage property, the police would have to pay. But if the purpose was to protect the public, they wouldn't. Does that remain, is that your current, is that the interpretation of section 17 that you urged us? It is in part. The difference is the public necessity exception that was ruled upon by this court in the first appeal, I think has an important fact, is an important factor that the Texas Supreme Court needs to review. It even mentioned it in the Steele case, but it didn't address it fully because that wasn't the forum. The forum was the immunity question. And no, cities are not immune from taking this claim in Texas law anymore. I was in law school at the time when that case came out in 1980. It was a pretty big deal at the time. And so we studied it. But in the past 45 years, there really hasn't been a case that has applied it in the context of a police action like we have here. But at the same time, you're acknowledging in those 45 years, there's never been a Texas case describing a limiting principle. And if the text is broader than the federal constitution's text, because it encompasses damage, you'd be asking us in the first instance to say, to tell Texas what its law is. And yet when I read Lake Houston, it sounds like the court's pretty clear that you do have to compensate when you damage property, unless the property inevitably was going to be damaged by whatever the threat is. Is that wrong? And if so, what source are you pointing to? Well, that throws me into the procedural parts of this case. Okay. And the procedural parts address two points. One is the supplemental jurisdiction that was maintained and retained by the district court. And the second one is the reelection or the election of remedies that was ruled upon by the district court. On the supplemental jurisdiction side of things, yes, in 1367 subsection C, there is discretion allowed to a district court to retain jurisdiction after the federal claims are dismissed. Here, the federal claims were dismissed. I've proposed and submitted that under the four statutory elements, and those four statutory elements are that the claim raises a novel or complex issue of state law, that the claim substantially predominates over federal claims. It says the district court has dismissed the federal claims, but here this court dismissed the federal claims. But there wouldn't be an abuse of discretion if we decide there is no state law supporting your position. We'd have to agree with you that there's ambiguity in spite of none being pointed to in Texas law. Well, the ambiguity I'm pointing to starts with Steele. Steele said there may be Houston. Right, but the facts were very similar in Steele, and they didn't see a necessity exception. Well, it wasn't there purportedly. They weren't there to review a necessity exception. The facts hadn't been disclosed or manifested. This was an immunity appeal. It only was addressing whether or not the city is immune. And the Supreme Court said the city may very well be able to prove a case. In the city of McKinney's view, it's available. It may be available. And after this court's decision in Baker, and after the Supreme Court's decisions in Texas that say that the rulings of federal courts are informative to the Texas Supreme Court on takings cases, I submit that this is a matter that needs to be brought before the Texas courts. Before the summary judgment below, did you bring up consent as a defense under state law? I mentioned it in fairness, but I didn't actually hone in on it because I thought that the other legal issues were bigger and stronger. And so what my point is, is that here the district court should have declined to step into the state court. And that's what I'm urging this court to do too, is to not step into the state court jurisprudence on Article 1, Section 17, but to let the state courts address it. And frankly, in light of this court's decision a couple years ago, that there is a public necessity exception. Yeah, so let's talk about that supplemental jurisdiction issue. Do you agree that the district judge has the right to keep the supplemental jurisdiction? And they have a very high ability to rule on that. And here there had been a trial and et cetera, et cetera. So it wasn't like just happened and federal thrown out and so then you should throw out the state. This was long after. So didn't the district judge have the right to keep the supplemental jurisdiction? Well under the statute, I have to say yes he did. But my argument is that there are factors to consider in that exercise of discretion. And we see that we see those factors a different way than the court saw them. Mainly starting off with even the district court admitted that this case raises novel and complex state court issues. And I think that's a strong reason to let the state courts determine it and to rule upon it under the guidance of state law. And so the common law factors are also listed and it's also things to consider. Judicial economy, convenience, fairness. I think it's fair to have a state law decision made by state courts and that removes federal courts including this court. When was this? When was the incident? It's been a while. Gosh, 2021. The house? Yeah. And the district court's comment was we're on the goal line. I understand. I understand it said that, but I don't see us that close. We may, we may be past the 50-yard line, but I think, but I wouldn't go that far into the red zone. Because I think what we have here are two distinct claims. And yes, there are some overlap of the jurisprudence. But for the city, the money isn't very much, but for the I understand that. And there's, in the record, there was an attempt. The court will note that the city tried to resolve this without success. First time around, there were amici briefs, correct? But we don't have the attorney general or any amicus in this. I guess I take it your concern is for the state of Texas, every single locality. It is. It is this time around, because after all, the fifth amendment became clear, frankly, not only in this court, but in the sixth circuit, in the seventh circuit, in the ninth circuit on similar facts, in other cases that I didn't bother to mention in the briefs. But the decision was the same in all those cases. There was a lot of scholarship critiquing. And of course, you know, when it went up to the Supreme Court, there were three, I think three, Justice, two. But is there scholarship on this as an unanswered question in Texas law that you can point to? No, I can't. Isn't that surprising? It's been 45 years, Judge. I can't explain it. I mean, it's just one of those things. Well, I was a state district judge and had thousands of hearings. Well, I don't know. Why aren't the last couple paragraphs of the Steele opinion enough? Okay, you'll have to point me to what you're talking about, Judge Hohmann. I'm talking about what you mentioned, the necessity discussion in Steele. You're asking us to focus on it, and it seems to me that it's pretty devastating against your position. Well, I'll start off with the statement in Steele that said, the defendant, City of Houston, may defend its actions by proof of a great public necessity. War, riot, pestilence, or other great public calamity. Not this case. Well, the Supreme Court didn't seem to limit it to that in the sense that it said the City of Houston may do that. And yes, it then went through some of the factors, but I don't see it as has been argued by my opponents. What it says, if you keep reading, is that the city argues that the destruction of property as a means to apprehend escapees is a classic instance of police power. We don't hold the police officers wrongful. We hold that innocent third parties are entitled to compensation. I understand it said that, but this was a reversal of immunity. I don't think it should be read further than that. Because the facts weren't before. Should we certify this to the Texas Supreme Court? I'm sorry? Should we certify this to the Texas Supreme Court? I think there's more than one question that needs to be certified. I'm familiar with that procedure, and I understand that that's sometimes what this court does, and I think it's fine in most cases. But here, we've got- To deny supplemental jurisdiction, which means starting over in the state trial courts, wouldn't it be more efficient to go straight to the state Supreme Court if we're going to do this? I don't know that it would because of the different issues involved. Because one issue is, does this court's maker decision have any sway over the public necessity exception available in state court? The others are the real- I don't see the argument for making these parties go all the way through the litigation process. If you think Steele's ambiguous, why not go straight to that court? Well, in trial, in this case, Baker's lawyers only pursued the Fifth Amendment claim. There was no instructions given regarding the inverse condemnation elements. The measure of damages didn't comply with the inverse condemnation rules. So the measure of damages that they selected before trial, that my opponent selected before trial, didn't address the state law claim. So it's not a matter of being able to unplug one from one socket and then plug it into the state law socket. Okay. Unless anybody has any more questions, you've saved time for rebuttal. Thank you. All right. So we'll hear from your opponent. Mr. Ron Jensen? Sir Ron Jensen. Thank you very much. Okay. Well, you're for Vicki Baker. We know that. Yes, ma'am. Go ahead. Your Honor. Good morning, Your Honor. And may it please the Court. This is a simple case. And that's because it presents the same facts as Steele v. City of Houston, where, as Your Honor's noted, police officers damaged a home in order to capture a third-party fugitive who had barricaded himself inside. But when you say it's a simple case, you are asking us to say, what is exempt police action under federal law is recoverable under state law? Yes, Your Honor, at least in this circuit. I think the way of reconciling Baker 1 with Steele is that in Baker 1, previous panel in this case found that the facts, the need to apprehend the public, the public need to apprehend an armed and dangerous man who's barricaded himself inside a home itself is enough to satisfy a public necessity exception to just compensation under the United States Constitution, the Fifth Amendment. But in Steele, as Judge Ho, you were alluding to earlier with the final paragraphs of Steele, the Texas Supreme Court had held that these very same facts do not satisfy any public necessity exception under the Texas Constitution. So just hypothetically, if you're a citizen and you somehow managed to call the police saying, I'm being carjacked, and they throw spikes in front of your car, in Texas, the police have to pay to repair the tires that they popped to save you? I'm not sure, Your Honor. I mean, there would be a variety of questions to ask. And I know that at least in the federal constitution, there are exceptions such as for intended. No, I'm asking you about state law. If your position is there isn't an equivalent necessity exception, I'm asking you, if you're in a car accident and you can't get out, the police use jaws of life to tear the car up to save your life. They, in turn, in Texas, have to pay to repair the car? I think that the government would have to show that some sort of exception applies, and they very well would. Not some sort. Describe to me what the exception is in Texas. I thought it was just pestilence, war, and inevitable discovery. So I'm very specifically asking you, in Texas, when citizens are in danger, they call the police to help them, but the police have to damage private property to help them. The police then, in Texas, do they or don't they have to pay? Well, under the public necessity exception, it might well be that they would have to, that they would not be exempt. Under the public necessity exception, but there might be another exception such as if, say, the damage is being done specifically to help the property owner escape the car. And it might well be that a public necessity exception, if the government were to argue that, okay, if we didn't do this, a person was imminently about to die, that the government could try to meet their exception. I mean, that's a different arena than we have here, right? Precisely, Your Honor, which is why our brief highlights that at the plane. So explain how this different arena leads to something different from what might happen with what Judge Higginson was asking about. Well, in this case specifically, I think it's noteworthy that the hostage had been released and was safely within police custody. The little girl. That's right, the 15-year-old girl. She was already gone. That's correct. And so it was just the guy. That's correct. And that's a different arena. That's right. And that's why Steele is on all fours here. Okay, but wait, wait, slow down. You're asking us to write a decision that says there are different arenas. If you're going to save a girl's life, the police don't have to pay. If you're going to get a home invader out, they do have to pay? Describe to me this different arena distinction. I think that this Court, just as a preliminary matter, doesn't have to explore the full breadth of exactly when the public exception would apply. No, but I'm just asking your rule of law. What are you saying? When is there a necessity? Well, I think that the rule of law that would make the most sense, though I don't think that this Court needs to address it because Steele on its own establishes that whatever exceptions might be don't apply here. I think it would make sense that a public necessity exception would be equivalent, at least in Texas, in light of the Lake Houston case, when the property was destined to destruction anyway. Okay, that's what I thought. And that there are other exceptions that can apply, just like under federal law, such as specific intended non-issuing. But we don't need to rule on any of that. Absolutely not. We just need to rule on this. Absolutely right. So what is this? Well, so in this case, Steele is on all fours. Well, we know three things about Steele. Number one, we know that it is presumptively a taking when police officers intentionally or foreseeably damage a third party's property in order to apprehend a fugitive. Second, we know that to the extent that an exception would apply to the takings analysis, it would be the government's burden to prove that exception. Number three, we know that the mere need to apprehend an armed and dangerous man, which is the language from Steele, while certainly enough to satisfy the public use component, meaning that the destruction was not itself illegal, is, as a matter of law, not enough to justify the government. Okay, so we have a 911 call. It's the owner of the property saying there's a home invader in my house, and he has a child. You're saying if the police are trying to rescue the child, they can damage and not pay. But once they get the child out, even though he's still in, they do have to pay? Is that what you're saying? I'm saying that would be an interesting case that would be asking for an extension of Steele. Whereas this case is asking for a very straightforward answer. You're saying we don't have to rule on that? Absolutely not.  Your Honor is quite right that there are many, perhaps, situations where it would be... But therefore, factually, you're saying they did no damage to the house before the child was released? That's correct. I don't know about zero damage, but the vast majority of the damage was... So I'm asking about this case, these facts, what we do have to decide. If they did any damage before the child came out, yes or no, under Texas law, the police have to pay? I think, again, under Texas law, I think that the government would have to mount a defense and it would need to show why one of these exceptions could apply. I would point to... When you say one of these, I thought you said a moment ago borrowing from Steele in Lake Houston. The only exception is inevitable debauchery. I would say under the public necessity exception. But takings analysis, especially destructive takings, is full of a variety of potential exceptions, one of which, as I noted earlier, is the specific intended beneficiary. There are certain equitable considerations, like, for example, if a fugitive were to barricade himself inside his own home and then sue for just compensation for the damage that was inflicted in order to apprehend him, then that would surely not be just. But what we do know is that whatever exceptions could apply under Texas law, as a matter of law, they don't apply here. The reason that the Steele court remanded was precisely so facts could be developed that might allow the city of Houston to mount some sort of defense to just compensation. But the facts here, after discovery, after trial, when, by the way, the city was on full notice of Steele this entire time, have shown that the record here matches the allegations as Steele. And so if the allegations of Steele were not enough to absolve the government, to absolve the city of Houston of its duty of compensations, then the record in this case, de facto, cannot be. I'd like to discuss supplemental jurisdiction for just a moment, Your Honors. We vacated judgment. How is it not an abuse of discretion for the district court to have maintained the jury award? Well, number one, Your Honor, from the Malvino versus Dell University case, allowing re-election remedies after the- No, but I'm just asking if we vacate the judgment, how does the jury award stand? I'm not getting to Malvino and election. Well, the jury award, I mean, from the trial is still there. It's the judgment. The only thing that this court vacated was the entry of judgment on Ms. Baker's federal claim, which is a creature of Texas law that's a bit unusual. And so what Malvino holds is that precisely the thing to do in this situation is to allow a re-election of remedies. I should note that the Baker 1 panel held that the initial exercise of supplemental jurisdiction of the district court, the entry of partial summary judgment, the holding of a trial for the fault of damages from Ms. Baker's Texas claim was a proper exercise of supplemental jurisdiction. And that panel, which I know he was on, but that panel could have just thrown out the whole case and said it has to go to state court once they took out the federal, but they sent it back. That's right. Which to me tells the district judge that the district judge can keep the supplemental jurisdiction because if this court didn't think he could, they would have said so because we have to deal with subject jurisdiction all the time. Absolutely, Your Honor. And my friend on the other side had made a jurisdiction argument on Baker 1, which was rejected in its footnote 2 of the Baker 1 opinion. And so for the purpose of retaining jurisdiction after remand, it was solely for the essentially ministerial act of re-electing remedy from Ms. Baker's now vacated federal claim to the Texas claim, which the court had already granted partial summary judgment. And I should say that if nothing else, the very fact that the city now on oral argument concedes that the district court had right to retain jurisdiction, supplemental jurisdiction should put the issue to bed. That alone means it could not have been the district court's, it could not have amounted to abuse of discretion to maintain jurisdiction. I'd like to discuss a few things that opposing counsel said. He noted that the district court did not address necessity below. That is correct, but the reason for that is because the city made no attempt to argue necessity below. And that's notwithstanding that Steele was already on the books and Steele already floated this idea of a public necessity exception that, though not satisfied by the need to apprehend an armed and dangerous man, could be out there somewhere. And the district court had no opportunity to address that in the first instance. Is there any post-Steele law on the issue of consent? Because I'm still struggling for a limiting principle. In other words, and you've got 45 years of Texas law, it doesn't seem like, I mean, he didn't have an opposite case, but I'm wondering, do you? Do you have any Texas case where a municipality actually was obliged to pay for any of the emergency police actions I've described? Do you have a single Texas case where they've been forced to repay? I don't, Your Honor. It could be because Steele is so on point. It could be that oftentimes damage in this arena is not, you know, broken down door isn't worth filing in court. But at the very least, one thing I think is no— Okay, so you're suggesting there are payments happening all the time in Texas. It's just so obvious no one ever litigates them? Is that the suggestion? I'm suggesting that I just, I don't know. And there's certainly no case that is suggesting that Steele should be narrowly limited. The most recent cases are Lake Houston and the Department of Transportation. Do you agree with me? This is not a hard question. Do you agree that when you look at footnote 39, even though it seems to equate Baker 1, it's a mis-equation? I think that the way of reading footnote 39 is that it's, is that the Texas courts are accepting that there is some sort of public necessity defense out there. But that— Or that the historical approach is the way to answer it. Correct. Though, while noting that we're talking about the Texas Constitution, which does have different language and different history from the Federal Constitution. But I think that while simultaneously, because the courts simultaneously cite Steele favorably, I think the way of reconciling that is that the Texas courts have not rejected the possibility of a public necessity exception. They have just departed from this circuit's reading of the Federal law in holding that whatever the contours of that exception, it does not apply simply because there is an armed and dangerous man who's barricading himself inside a building. Do you think consent could be sort of the magic bullet limiting principle? It just wasn't preserved here? I don't think so, Your Honor. And that's because the Texas courts have been, have been quite clear on this, that consent, because we're talking, I would think it should separate two things. There's consent to the entry upon the land. And in that case, I think it's fair to say that Ms. Baker, you know, she called the police saying the bad guy you're looking for that we saw on the news, he's in my house. But that's a different thing from consenting to the taking with no just compensation. And the courts, the Texas courts have held over and over again, and they are older cases from the early 20th century, I'll admit that, that there needs to be more context of the person saying something to the effect of, take it, you know what, you don't need to pay me for it. I'm remembering distantly, but isn't it true that in this particular record, there was also evidence that it was agreed that the force used to extract, well, eventually he was killed, but it was not excessive? It was agreed that it was reasonable in terms of there was no Fourth Amendment.  And that's why I think that it's, any of the language of Ms. Baker's attorney at the trial court or before the jury talking about how it was necessary, I think should be, to be read as saying it was necessary in the layman's sense, that the police reasonably concluded it was necessary to destroy your home, just in the same way a government official might reasonably conclude that it's necessary to build a highway through your  That's a different thing from conceding that there was a, that these facts constitute public necessity exception under Texas law. Opposing counsel says that we did not hold trial over the state claim, and that's just not true. If you look at the jury instructions, it explicitly references Ms. Baker's state claim. Now, what opposing counsel is pointing to is that the Texas courts have noted that there's a general rule that the measurement of damages in inverse condemnation cases should be, should be the diminution of market value. And to that, I'd say a few points. Number one, the cost of repairing a home is evidence of diminution of market value. You're not going to be able to put a home back on the market when it's filled with toxic gas and, and then explosives have been set to the garage doors. Number two, the other side certainly doesn't have any case that rejects repair costs as, as a proxy for just compensation, which always is. Ms. Baker testified herself to the cost. Absolutely. She testified herself to the cost of repairs. Back on, on supplemental jurisdiction, could you address, I mispronounce it maybe, ENOCS, E-N-O-C-K-S, the authority they cite for once the federal claims disappear, it should, this case should go for state adjudication. Well, Your Honor, the other side certainly does not present any single case, including the ENOCS case, where it, a court found that supplemental jurisdiction was lacking after there had been grant of summary judgment below, after there had been a trial, and after then, only the federal claims. But there was only a trial here on the damages. There really wasn't a trial on the takings itself. Fair enough, Your Honor. But, but the, the point being that even if you look at section 1367, it says that it might be, be prudent or to dismiss, to find the lack of supplemental jurisdiction when the district court has dismissed all federal claims. It was, I've never seen a case where supplemental jurisdiction was found lacking after the appellate court dismissed the claim that the district court had granted. Because it's so much given to the district judge, and most of the time they do throw it out, but this was one where a lot had happened, including a trial on part of it, but a lot had happened before that. So I think that's, I, I don't think there has ever been a case that says you cannot keep that on supplemental jurisdiction in that circumstance. The other side certainly hasn't cited one. I've never seen one. And as I said just a few moments ago, opposing counsel acknowledges that it, that it was an adjudicial authority. A couple of other things, Your Honor. Judge Higginson, you were asking about the viability of Steele, what's happened within the last four decades. Certainly not dispositive, but I think it's worth noting that as you also mentioned earlier, Judge Higginson, on the, for Baker 1, there was multiple amicus briefs. One of them was the Texas Municipal League, which it handles, as far as I'm aware, the, the Texas City's insurance matters. Their brief, and this is a page seven of their amicus brief before the first panel, their, their, their, their brief essentially concedes that the Texas law covers these facts. And they were asking in, in, in their amicus brief, not, effectively not to extend the Texas law's reasoning to federal law. And I think it's, it's, presumably— Did they cite anything other than Steele? I should go back and read that. I, I don't think so. I think it's worth, worth, worth reading. But I, I think that it's, presumably, the reason why TML has not filed an amicus brief here can, can speak volumes. That, that, that it's— Since you, you were nice to go back to the amicus question, what about scholarship? Are you aware of any Texas law scholarship? I'm aware that Mollye Brady at the, at the Harvard has written about the damaging causes in various state constitutions— But not directly on Section 17? Not directly— Because there are several other states that do include damage in— That's right. —their equivalent. That's right. And the reason is because it's actually quite common. Judge Ho, I believe you mentioned earlier that the Texas state constitution, the Texas courts, and this circuit have both recognized that Texas takings provisions are more protective of property than the federal constitution. That's not unusual. How many other states include damage? I, I don't know, Your Honor, offhand. It, it is, it is more than just Texas. I believe this was a mid-19th century thing. If memory serves me, though I'm not entirely sure, I think part of this was done to capture certain nuisance-related things of if, if the government approved a railroad that wouldn't go through the person's property, but maybe the noise would reduce enjoyment and use of the property that some state, I, I think, I think, I'm not entirely sure. But regardless, this, the Steele opinion does ground its, its holding on specifically the Texas constitution and of, as of 1876, did consciously depart from the federal constitution through the damaging language. Do you have a view on certifying to the Texas Supreme Court? If this Court wishes to certify, the Supreme Court certainly can. I think that that is, is certainly more defensible than finding that the district court abused its jurisdiction or abused its discretion. I, I don't think it's necessary just because Steele is so on point and that Steele continues to be cited, though you're right, you're correct, Judge Higginson, that Steele has not, has not been cited, there's not been much more case law on, on police officer-caused damage. Steele has been cited repeatedly as providing the paradigmatic structure for inverse condemnation in Texas. And with the Lake Houston case from, from just this last year, it supports that the best reading of Steele is that it's, the exception it was discussing can be read only when the property was, quote, destined to be destroyed anyway, which there is no allegation remotely in this case that Ms., that Ms. Baker's property would have been destroyed anywhere close to what happened had the police not acted. And in fact, the, Ms. Baker's insurance covered whatever damage is directly attributable to Mr. Little. And, but unfortunately, as is very, very common across the country, it's extremely difficult to insure oneself against governmental-caused damage, in part because the damage was lawful. The, the police officers don't have lawful. Well, and he'd already killed himself when they really pushed like that, so.  Unless your honors have any further questions, I respectfully request that the judgment will be affirmed. Okay, thank you. We'll now get your opponent's rebuttal. Before you get started, do you want to address the TML amicus brief point? Well, it wasn't brought up in their briefs, so I wasn't prepared for that today. Well, there was no amicus brief. I think that's why they didn't. But that's, I don't know why they didn't decide to do it. Okay, but what if, what if page seven of, essentially the argument is TML's not here because they've already stipulated to the state claim. I realize they're not binding on you, but it is interesting. I wouldn't, I wouldn't go that far. I wouldn't go that far at all. Well, that's why I'm asking you. Well, they're not going that far because they're paying our bills to be here. TML is paying our bills to be here. What's your interpretation? I'm just giving you a chance since you're here. What's your interpretation of the page seven of the amicus brief? I didn't read it before today. Frankly, I would be speaking out of order if I were to try to answer that question, so I will not. But what I will address again is how the reliance on steel to me is, is not so strong as they make it out to be. And again, factually, I think there's quite a bit of difference. Last time I was here, Judge Higginson asked me, well, what about steel? And I started off getting into the facts. And the facts are quite different. The Houston Police Department intentionally burned the place down. And no one on any, anywhere that I can see, said that what the Houston police was reasonable and necessary. They held the fire department at bay and said, no, we're burning the place down. Here. I'm sorry, you're saying there's no language in steel that suggested what the city did was reasonable? No, I didn't see it. Okay, because I quoted it earlier. I was just, I quoted the, hold on. I quoted that language earlier. I'll just repeat it. We do not hold that the police officers wrongfully ordered the destruction of the dwelling. We hold that the innocent third parties are entitled to compensation. That's the key sentence of the holding. I understand that. I read that as to say it wasn't before them. The issue wasn't before them because it was an immunity case. And the whole issue that they had to decide was, were cities immune under the takings clause under these kinds of actions? They said, no. That's the legal part of steel where it says it stops. And since steel, there hasn't been any cases in the police damage realm that have applied steel further than that, other than saying you have a cause of action. Do you know how many other states like Texas extend beyond what the federal? No, I don't. Because that, you hear my story, and this was the same way before. What's the limiting principle? There has to be one. Both sides agree there's been no courts in steel that's actually tried to articulate it. We've been given one, which is a fair extraction from Lake Houston, but maybe in these other states that have identical language, perhaps tracing back to railroads, there is. I understand the idea because Judge Higginson, you focused on the history of things. In the first one. In the first one. Yeah. And I understand that. And the 1871 Constitution that we're operating under in Texas right now does have some different provisions, same provisions with some different language and some different provisions in it, and it's been amended 500 times ever since. So I don't know that there is a kind of principle other than what steel did mention, but didn't rule on. I understand what Judge Ho says about the public necessity that the city of Houston might try, and then it seemed like after giving with the right hand, it took it away by saying here's what counts as public necessity. I'm not buying that, and I'm arguing for the court to remand this case to state court so they can evaluate what the Baker 1 case said about public necessity in this case where there was no argument about the reasonable and necessary actions of the police and mechanic to do what they did. That has been, I think, one of the key points here, that differentiates this case from the others. And it differentiates it, I submit, from that Lake Houston case because that was a flooding case. And in a flooding case, under inverse condemnation law, there's a whole bunch of that. Drag was another flooding case where, that's G-R-A-G-G, it's cited in the briefs, where the city in that case was intentionally taking actions that it knew was going to cause flooding and damage to property. But I think those are distinctions that are material and different when you compare it to what the police need to do. And when the police need to act and to address a public crime and a public necessity like this, I think that there needs to be an evaluation of that. You know, I could be standing here arguing that you ought to just reverse and render in my favor, but I think that would kind of beg the question of improperly stepping into state law when I don't think that's what the district court should have done. I understand that the statute says he could if he wanted to exercise discretion, but I'm suggesting that he shouldn't have needed to do that. Okay. How many people were in danger by the situation in this case? Obviously, the 15-year-old girl. Well, in the neighborhood. I mean, it was an hours-long event in the neighborhood. And because the girl came out and said that he had some guns and was planning on coming out shooting, I don't know there's any way to quantify. Okay. Thank you. We appreciate both sides' arguments. The case is now under review.